United States District Court
Southern District of Texas
**ENTERED**
April 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE DODD, | § | |
| Plaintiff. | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-cv-03671 |
| CHUBB NATIONAL INSURANCE COMPANY, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Plaintiff's Motion to Remand. Dkt. 16. After carefully reviewing the briefing, analyzing the applicable law, and hearing oral argument, I recommend that the Motion to Remand be **GRANTED**.

### I. BACKGROUND

In September 2019, Plaintiff George Dodd ("Dodd") was involved in a car accident with uninsured motorist Santos Vasquez. Dodd filed insurance claims under his primary and excess automobile policies with Chubb National Insurance Company ("Chubb"). Chubb hired Allen, Stein & Durbin, P.C. ("ASD"), a law firm, to "assist in the evaluation" of his claim. Dkt. 3-5 at 1. During this evaluation process, Dodd claims Chubb and ASD (collectively "Defendants") "engaged in a fraudulent plan to alter, fabricate, and misrepresent the terms and conditions of [his] policies." Dkt. 3 at 22.

On September 30, 2021, Dodd filed suit in the 334th Judicial District Court of Harris County, Texas, asserting, among other things, claims for violations of the Texas Insurance Code. *See* Dkt. 1-3 at 1–33. In this lawsuit, Dodd seeks more than $1 million in damages. *See id.* at 3. On November 8, 2021, Chubb timely removed the case to this Court. *See* Dkt. 1. Dodd filed the instant Motion to Remand on January 21, 2022. *See* Dkt. 16.

Defendants do not dispute Dodd's allegations regarding the parties' citizenship—namely, that ASD is a citizen of Texas for jurisdictional purposes. Because Dodd is also a citizen of Texas, and because Dodd does not assert any federal claims in the underlying lawsuit, this would ordinarily destroy complete diversity and preclude removal to federal court. *See* 28 U.S.C. §§ 1332, 1441. However, Defendants argue that removal was appropriate because ASD is an improperly joined party meant to circumvent this Court's diversity jurisdiction.

Chubb advances two principal improper-joinder arguments. First, it argues that ASD was not engaged "in the business of insurance" and, therefore, is not subject to liability under the Texas Insurance Code. *See* Dkt. 19 at 14–16. Second, Chubb argues that even if ASD were engaged in the business of insurance, the Insurance Code generally exempts attorneys "from being classified as adjusters who are subject to Texas insurance laws and regulations." *Id.* at 16. ASD separately argues that remand is appropriate because the attorney-immunity doctrine bars Dodd's claims. *See* Dkt. 20 at 5–9.

## II. LEGAL STANDARD

Federal law allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004). One of these prerequisites is complete diversity, which "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quotation omitted). However, the improper-joinder doctrine constitutes "a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). Under the doctrine, a federal court must disregard the citizenship of any improperly joined defendant, *see Smallwood*, 385 F.3d at 572–73, and "that party must be dismissed without

2

prejudice." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016). If no party has been improperly joined, the court lacks subject-matter jurisdiction and must remand the case. *See* 28 U.S.C. § 1447(c).

The Fifth Circuit has recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). Defendants do not assert that Dodd has committed "actual fraud" in the pleading of jurisdictional facts, so the only issue before me is whether Dodd can establish a cause of action against ASD. Under this approach, the test for improper joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant. *See Smallwood*, 385 F.3d at 573. Stated differently, remand is appropriate unless there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. *See id.*

The Fifth Circuit has instructed district courts to resolve the improper-joinder issue by conducting a "Rule 12(b)(6)-type analysis," which incorporates the federal pleading standards. *See Int'l Energy*, 818 F.3d at 207–08 ("[B]ecause *Smallwood* requires us to use the Rule 12(b)(6)-type analysis, we have no choice but apply the federal pleading standard embodied in that analysis."). To satisfy Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In cases where the plaintiff has sufficiently stated a claim against the in-state defendant, "but has misstated or omitted discrete facts that would determine the propriety of joinder," district courts may, at their discretion, pierce the pleadings and consider summary judgment-type evidence. *Smallwood*, 385 F.3d at 573. The Fifth Circuit has cautioned, however, that such an inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [nondiverse] defendant." *Id.* at 573–74.

The removing party bears the "heavy burden" of proving that joinder was improper. *Id.* at 576. "[T]he existence of even a single valid cause of action against [nondiverse] defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). Because federal courts are courts of limited jurisdiction, removal statutes are construed narrowly with "any doubt about the propriety of removal" being resolve in favor of remand. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Accordingly, in deciding whether a party was improperly joined, I must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff." *Id.* at 281.

### III. WHAT MATERIALS CAN I REVIEW TO MAKE THE REMAND DECISION?

Whether the Court has jurisdiction to decide this case depends on whether there exists a reasonable possibility of recovery by Dodd against ASD. Before assessing the sufficiency of Dodd's pleadings, I must address a preliminary issue regarding what materials I may consult.

#### A. OPERATIVE PLEADING

Chubb contends that Dodd's original state-court petition is the "operative pleading for the purposes of removal and remand proceedings." Dkt. 19 at 6. Dodd, on the other hand, argues that I should consider the First Amended Complaint[1] as part of my improper-joinder analysis. ASD also believes that the operative pleading for the improper-joinder inquiry is the First Amended Complaint.

As a general matter, the assessment on whether joinder is proper must be performed "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th

---

[1] Dodd filed the First Amended Complaint on November 19, 2021. *See* Dkt. 3. Because he filed the First Amended Complaint within 21 days of when a responsive pleading was filed in state court, *see* Dkt. 1-4 (indicating that an answer was filed in state court on October 29, 2021), leave of court was not necessary. *See* FED. R. CIV. P. 15(a)(1)(B) (allowing a party to amend "as a matter of course" within "21 days after service of a responsive pleading" "if the pleading is one to which a responsive pleading is required").

4

Cir. 1995). As a result, post-removal filings may not be considered "when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). While it is true that a district court's assessment of jurisdiction is normally limited to the state-court record at the time of removal, a district court may consider post-removal filings such as affidavits, stipulations, or amendments to the extent such filings "clarify or amplify the claims actually alleged" in the state-court petition. *Id*. "Under those circumstances, the court is still examining the jurisdictional facts *as of the time* the case is removed, but the court is considering information submitted after removal." *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998).

Dodd's First Amended Complaint does not add any new claims or defendants; instead, it clarifies the basis for its already-alleged claims against ASD. Since this appears to be an acceptable use of post-removal filings, I will consider the First Amended Complaint in considering the Motion to Remand. *See Griggs*, 181 F.3d at 700 (explaining that courts may consider post-removal filings that "clarify or amplify the claims actually alleged" in the state complaint, but not those that "present new causes of action or theories not raised" in the state complaint); *Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 346 (5th Cir. 2013), *abrogated on other grounds by Int'l Energy*, 818 F.3d 193 (noting same and assuming arguendo that the facts contained in plaintiff's post-removal amended complaint could be assessed as clarifying state-court petition); *Allbright v. W. Concrete Pumping, Inc.*, No. 1:17-CV-063-RP, 2017 WL 1374180, at *3 (W.D. Tex. Apr. 12, 2017) (considering first amended complaint where it "merely clarif[ied] the bases for already alleged claims and theories stated in the original state petition"); *Apex Golf Props., Inc. v. Allstate Ins. Co.*, No. 2:13-CV-250, 2013 WL 5724523, at *1 (S.D. Tex. Oct. 21, 2013) (considering the first amended state complaint the

5

"operative pleading" but referencing the second amended federal complaint in "interpreting the causes of action or theories alleged in the First Amended Complaint"); *Hinton v. Union Nat. Life Ins. Co.*, No. CIVA 1:07CV45 JAD, 2007 WL 2059996, at *1–2 (N.D. Miss. July 12, 2007) (allowing post-removal amendment to clarify the allegations against a defendant when it was otherwise "a close call" as to whether original state complaint stated a claim).

### B. DODD'S OBJECTIONS TO CHUBB'S AFFIDAVITS

Chubb included as exhibits to its Response to Plaintiff's Motion to Remand affidavits by Jennifer Durbin ("Durbin"), an attorney at ASD, and its attorney of record in this case, Kevin Kyser ("Kyser"). *See* Dkt. 19-3 and Dkt. 19-5. Kyser's one-page affidavit is essentially a verification of Chubb's pleadings—Kyser testifies that that all information contained within Chubb's Response to the Motion to Remand is true and correct. *See* Dkt. 19-5. Durbin, however, testifies at length about ASD's role in evaluating Dodd's uninsured-motorist claim:

> AS&D is a law firm. Although AS&D may provide advice and counsel as to the legal aspects of an insurance claim, including opinions regarding the value of a claim, at no time has AS&D, or its lawyers or staff, held themselves out as "adjusters" or insurance company personnel. Nor does AS&D adjust any claims or provide adjusting services.

Dkt. 19-3 at 2. The quoted language is only a snippet of Durbin's testimony. *See id*. Dodd has objected to both affidavits on various grounds. *See* Dkt. 24 and Dkt. 25.

While it is within my discretion to pierce the pleadings and consider summary judgment-type evidence as part of my improper-joinder analysis, such an inquiry "is appropriate only to identify the presence of *discrete and undisputed facts* that would preclude plaintiff's recovery against the [nondiverse] defendant." *Smallwood*, 385 F.3d at 573–74 (emphasis added). The role ASD played in evaluating Dodd's claim and whether it acted as Chubb's de facto adjuster, thus exceeding the boundaries of providing legal services, are hotly disputed issues in this case. In other words, it would be inappropriate to consider the Kyser and

6

Durbin affidavits in the present context as they do not establish a "discrete and undisputed fact."

## IV. SUFFICIENCY OF DODD'S ALLEGATIONS

I now consider whether Defendants have demonstrated that there is no reasonable basis to predict that Dodd might be able to recover against ASD.

### A. THE FIRST AMENDED COMPLAINT'S ALLEGATIONS

According to the First Amended Complaint, the underlying car accident occurred on September 30, 2019. *See* Dkt. 3 at 5. Dodd timely notified Chubb of his claim. *See id.* at 9. In January 2020—after the accident but before ASD became involved—Dodd asked Chubb to confirm the applicable automobile insurance policy that was in effect at the time of the collision. *See id.* at 23. Chubb sent Dodd a 61-page policy in response. *See id.* Dodd avers that the 61-page policy is identical to the automobile insurance policy Chubb gave him when the policy was first issued, save for a few introductory pages. *See id.* at 23–24.

On January 29, 2021, Dodd's counsel sent Chubb a written demand for $515,000. *See id.* at 36. On March 29, 2021, Dodd received a letter from Durbin advising him that ASD "ha[d] been retained by Chubb to assist in the evaluation" of Plaintiff's claim and that an "additional investigation" was necessary "in order to fully evaluate [his] demand." Dkt. 3-5 at 1. In relevant part, the letter read:

> Please be advised that in order to fully evaluate your client's demand for the UM policy limits additional investigation is necessary. We have had an opportunity to review the medical records you provided in your demand. It appears these are the only records that have been produced to Chubb since the claim was originally submitted. We need to request these and additional records from the identified medical providers to fully evaluate this claim. Enclosed please find a medical authorization for your client's signature so that we may obtain his medical and billing records. Please have your client execute the enclosed authorization and return at your earliest convenience.
> 
> We also request that you provide us with the following:
> 
> - A list of medical providers your client has seen over the last ten (10) years (including names and addresses); and

7

- The name and address of your client's primary care providers.

Once we have received the requested records we may also request that your client submit to an examination under oath and a physical examination by a physician of Chubb's choice **pursuant to the terms of the policy**.

*Id.* at 1–2 (emphasis added).

Dodd sent Chubb and ASD multiple written requests, seeking information and clarification regarding ASD's role in the claim-evaluation process, as well as ASD's determination that additional investigation was necessary to process his claim. *See* Dkt. 3 at 14–18. According to Dodd, neither party responded. *See id.* at 26.

On May 18, 2021, Durbin "reiterated her assertion" that Dodd's policy required that he identify his medical providers for the past ten years and submit to a physical examination and an examination under oath, though Durbin "conceded that she was unable to locate such terms in the Policy." *Id.*

The following day, Durbin sent Dodd an e-mail in which she told him that his automobile insurance policy included terms and conditions that were not part of the 61-page policy Chubb sent Dodd in January 2020. *See id.* at 26–27. Durbin's e-mail included copies of the two documents purportedly governing Dodd's insurance claim. Both documents provide:

> **Your duties after a loss**
>
> ...
>
> **Examination**. A person making a claim under any liability or vehicle coverages in this policy must:
>
> - submit as often as we reasonably require;
>   - To physical exams by physicians we select, which we will pay for; and
>   - To examination under oath and subscribe the same. . . .
> - authorize us to obtain;
>   - medical reports; and
>   - other pertinent records.

Dkt. 3-8 at 67–68; Dkt. 3-9 at 60–61. Durbin told Dodd that his policy references the attached documents in a section she referred to as its "Coverage Summary," but Dodd insists this was the first time he ever saw either document. *See* Dkt. 3 at 27–29 (alleging the two documents are "Chubb producer guidance document[s] . . . which had never previously been provided").

As exhibits to the live pleadings, Dodd has included copies of the 61-page policy, as well as the two documents Durbin sent. All three identify themselves as "Chubb Masterpiece" policies. The "Coverage Summary" Durbin mentioned is simply a table of contents that identifies the policy's chapters (e.g., "Uninsured/Underinsured Motorist Protection"). *See* Dkt. 3-6 at 36. Each Chubb Masterpiece policy includes its own table of contents identifying that respective policy's chapters.

While the two "new" Chubb Masterpiece policies include all the same chapters as Dodd's 61-page policy, they also contain additional chapters. *Compare* Dkt. 3-6 at 36, *with* Dkt. 3-8 at 3, *and* Dkt. 3-9 at 2. Moreover, as already mentioned, the new Chubb Masterpiece policies also include additional terms, such as requiring the insured to submit to a physical examination.

On May 20, 2021, Chubb sent Dodd an e-mail, copying Durbin, which "repeat[ed] ASD's 'incorporation by reference' theory"—i.e., that Dodd's policy's table of contents incorporates other coverage provisions outside of the policy. Dkt. 3 at 29. Dodd argues that Defendants' attempt to incorporate additional policy requirements "supposedly identified on the table of contents page of the Policy . . . is squarely rejected and prohibited by Texas statutory law." *Id.* (citing TEX. INS. CODE §§ 543.002, 2301.057).

On May 24, 2021, Chubb sent Dodd an e-mail, again copying Durbin, that included a 69-page document, which Chubb claimed was a "true and accurate copy" of Dodd's automobile insurance policy. *See* Dkt. 3-13. Like the two Chubb Masterpiece policies Durbin sent Dodd a few days earlier, the 69-page policy requires that the insured sign a medical release and submit to a physical

9

examination and examination under oath as part of the insured's "duties after a loss." *Id.* at 64. Dodd alleges Defendants "fabricated a new purported 'certified policy' in which they brazenly added the . . . language they wanted and claimed that this fraudulently manufactured document constituted [Dodd's] applicable policy that applies to his claim." Dkt. 3 at 33–34.

**B.    DODD HAS ADEQUATELY STATED A CLAIM AGAINST ASD**

### 1. *Dodd Sufficiently Alleges that ASD Engaged in the Business of Insurance*

First, I turn my attention to whether there is a reasonable basis for me to conclude that Dodd could recover against ASD based on the facts alleged in the First Amended Complaint. Dodd asserts claims against ASD under Chapters 541 and 542 of the Texas Insurance Code. Because Chapter 542 is clearly inapplicable,[2] I will focus on Chapter 541.

Chapter 541 authorizes a private right of action against a person who engages in "unfair methods of competition or unfair or deceptive acts or practices" in the "business of insurance." TEX. INS. CODE § 541.001. The chapter defines "person" as "an individual . . . or other legal entity engaged in the business of insurance, including an agent, broker, or adjuster, or life and health insurance counselor." *Id.* § 541.002. Thus, if I determine that the facts alleged, accepted as true, state a claim that ASD was "engaged in the business of insurance," Plaintiff has alleged a plausible claim against ASD.

The First Amended Complaint alleges that ASD engaged in the business of insurance because the firm investigated and evaluated the merits of Dodd's

---

[2] Section 542.002 "applies to the following insurers . . . : (1) a life, health, or accident insurance company; (2) a fire or casualty insurance company; (3) a hail or storm insurance company; (4) a title insurance company; (5) a mortgage guarantee company; (6) a mutual assessment company; (7) a local mutual aid association; (8) a local mutual burial association; (9) a statewide mutual assessment company; (10) a stipulated premium company; (11) a fraternal benefit society; (12) a group hospital service corporation; (13) a county mutual insurance company; (14) a Lloyd's plan; (15) a reciprocal or interinsurance exchange; and (16) a farm mutual insurance company." TEX. INS. CODE § 542.002. As acknowledged by Dodd's counsel at oral argument, ASD does not fall under any of these 16 categories. Dodd's Chapter 542 theory warrants no further discussion.

uninsured-motorist claim, improperly reviewed Dodd's medical records, wrongfully determined an additional investigation was necessary, and misrepresented the terms of Dodd's insurance policy. Dodd also claims that ASD sent Dodd inconsistent versions of his insurance policy, the latter of which Dodd alleges Defendants "fraudulently manufactured" in a brazen attempt to unlawfully and intentionally delay or deny his claim. For purposes of the improper-joinder analysis, I am required to accept all well-pleaded allegations as true, viewing them in the light most favorable to Dodd. *See Davidson v. Ga.-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

In my view, Defendants wholly disregard Dodd's allegations concerning ASD's purported improper handling of his claim—i.e., the very conduct he contends demonstrates that ASD was engaged in the business of insurance. Instead, Defendants stake their improper-joinder argument on me finding that ASD "is a law firm and does not engage in the business of insurance." Dkt. 19 at 16. But possessing a law license does not categorically exempt conduct that otherwise would fall within the purview of engaging "in the business of insurance." Moreover, the conduct of which ASD is accused of committing, although performed by an attorney, could just as easily have been conducted by someone not possessing a law degree. Indeed, "the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." *Soto v. Liberty Mut. Fire Ins. Co.*, No. A-06-CA-819 AWA, 2007 WL 9710181, at *3 (W.D. Tex. May 23, 2007).

At this stage of the case, I am not suggesting that Dodd's claims against ASD are meritorious or that he will ultimately prevail. Focusing on the allegations in the First Amended Complaint, I simply "cannot say with certainty" that Dodd has no reasonable possibility of recovery against ASD. *Guzman v. Cordero*, 481 F. Supp. 2d 787, 790 (W.D. Tex. 2007). *See also Santos Arita v. Stericycle, Inc.*, No. CV GLR-20-355, 2020 WL 6684871, at *4 (D. Md. Nov. 12, 2020) ("Although defendants may ultimately be correct that plaintiffs' claim lacks merit, a court

evaluating a 'nominal party' or 'fraudulent joinder' contention is not in a position of evaluating the full merits of the parties' controversy." (cleaned up)).

### 2. Texas Insurance Code § 4101.002

Chubb next argues that ASD is exempt from claims under Chapter 541 because § 4101.002 of the Insurance Code prevents attorneys "from being classified as adjusters who are subject to Texas insurance laws and regulations." Dkt. 19 at 16. This section, titled "General Exemptions," is part of Chapter 4101, which regulates the licensing process, continuing-education requirements, examination procedures, and disciplinary rules for insurance adjusters. *See* TEX. INS. CODE §§ 4101.001–.251. In relevant part, § 4101.002 provides:

> (a) *This chapter* does not apply to:
>> (1) an attorney who:
>>> (A) adjusts insurance losses periodically and incidentally to the practice of law; and
>>> (B) does not represent that the attorney is an adjuster.

*Id.* § 4101.002(a)(1) (emphasis added).

"By its statutory language, § 4101.002 exempts certain persons from 'this chapter'—Chapter 4101—and its requirements that insurance adjusters must take an exam, maintain a license, and earn continuing-education credits." *Hazari LLC v. Everest Indem. Ins. Co.*, No. CV H-19-4071, 2020 WL 1969530, at *3 (S.D. Tex. Apr. 14, 2020). It "does not exempt anyone from liability under Chapter 541 of the Texas Insurance Code," the chapter under which Dodd sues ASD. *Id.* Accordingly, § 4101.002 does not bar Dodd from pursuing Chapter 541 claims.

### 3. The Attorney-Immunity Doctrine

As for ASD's argument that it is immune under the attorney-immunity doctrine, it is well settled that "[a] lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages." *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ). But "attorneys are not protected from liability to non-clients for their actions when they do not qualify

12

as the kind of conduct in which an attorney engages when discharging his duties to his client." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47 (Tex. 2021) (quotation omitted). *See also Likover*, 696 S.W.2d at 472 ("where a lawyer acting for his client participates in fraudulent activities, his action in so doing is 'foreign to the duties of an attorney'" (quoting *Poole v. H. & T. C. R'y. Co.*, 58 Tex. 134, 137 (1882))).

Here, ASD admits that it was hired to investigate and evaluate the merits of Dodd's uninsured-motorist claim. And Dodd alleges that, while doing so, ASD improperly reviewed his medical records, wrongfully determined that additional investigation was necessary, intentionally misrepresented the terms of his automobile insurance policy, and fabricated a new policy in which it added additional terms. This is "not the kind of conduct in which an attorney engages when discharging his duties to his client." *Landry's, Inc.*, 631 S.W.3d at 47 (quotation omitted). *See also Bagga v. FL Receivables Tr. 2002-A*, No. CV B-04-167, 2005 WL 8168423, at *13 (S.D. Tex. Sept. 2, 2005) (concluding attorney immunity did not bar plaintiff's claims and granting remand because the complained-of conduct "involve[d] an inspection and written report that, although performed by an attorney, could have been conducted by someone not possessing legal skills").

Once again, it may very well be the case that ASD's conduct is protected by attorney immunity. But accepting Dodd's well-pleaded allegations as true, I cannot say with certainty at the pleading stage that ASD is immune from suit.

*\*\*\**

To be clear, my decision turns on the fact that Dodd has sufficiently alleged that ASD's conduct *potentially* exceeded the boundaries of providing legal services and impinged on engaging "in the business of insurance." Specifically, Dodd alleges that Chubb hired ASD to investigate and evaluate the merits of his underinsured-motorist claim. He further alleges that, during its investigation, ASD wrongfully determined an additional investigation was necessary, intentionally

13

misrepresented the terms of his insurance policy, and fabricated a new policy in which it added additional terms in an unlawful attempt to delay or deny his claim. Dodd has pleaded specific facts to support his allegations, demonstrating they are more than conclusory accusations of wrongdoing. Applying a Rule 12(b)(6)-type analysis and resolving all contested factual issues in Dodd's favor, there is "arguably a reasonable basis for predicting that state law might impose liability" on ASD based upon the facts alleged. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003). Whether Dodd's allegations will eventually carry the day is not for me to decide, nor should my decision be interpreted in any way as a comment on the merits of Dodd's case.

## CONCLUSION

For the above reasons, I recommend that the Court **GRANT** Plaintiff George Dodd's Motion to Remand (Dkt. 16) and remand this case to the 334th Judicial District Court of Harris County, Texas.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed on this 21st day of April 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE